UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-CV-339-KKC

LARRY NORRIS                                                              PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

Dr. MICHAEL GROWSE, ET AL.                                    DEFENDANTS


The Court considers the Complaint, R. 2, filed by *pro se* plaintiff Larry Norris, who is

confined in Federal Medical Center-Lexington ("FMC-Lexington"), located in Lexington,

Kentucky.  By Separate Order, the Court will address Norris' two more recent submissions, (1)

his "Motion for Injunctive Relief," which the Court construes a "Motion to Amend the

Complaint," R. 8 and (2) the "Motion for Emergency Injunctive Relief," R. 9, filed by Norris.

For the reasons set forth below, the Court will order one of the named defendants to

respond to the allegations asserted in the Complaint, and will dismiss the remaining claims

asserted in the Complaint against all other defendants; will deny Norris' motion for injunctive

relief, R. 8; and will direct Dr. Maria Marrero to respond in expedited fashion to the allegations

contained in the "Motion for Emergency Injunctive Relief," R. 9.

PROCEDURAL BACKGROUND

On October 15, 2009 Norris filed this *pro se* civil rights action, asserting constitutional

claims under Title 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six

Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971).  Norris also asserted negligence

claims under the FTCA.  Norris alleged that with respect to several medical conditions from

which he suffered, the defendants had denied him proper and necessary medical treatment in violation of the Eighth Amendment of the United States Constitution. He further claimed that some of the named defendants verbally insulted him and conspired to deprive him of needed medical treatment.

The Court directed Norris to provide documentation relative to his exhaustion efforts of both his *Bivens* constitutional claims and his FTCA claims. *See* Order, R. 4. Norris thereafter provided the Court with his *Bivens* exhaustion remedies and responses. R. 5. On November 25, 2009, Norris filed a motion seeking either a stay of this proceeding, or the voluntary dismissal of his FTCA claims, because he had not begun the FTCA administrative remedy process. R. 6. On December 11, 2009, the Court entered an Order construing Norris' motion as a voluntary dismissal of his FTCA claims and dismissed those claims without prejudice. R. 7.

Because this is a civil action which a prisoner is pursuing against government officers, the Court must screen Norris' constitutional claims under 28 U.S.C. § 1915A, which requires a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id*., § 1915A. *Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

<u>NAMED DEFENDANTS AND RELIEF SOUGHT</u>

In his original Complaint, R. 2, Norris asserts medical claims against five defendants,

all of whom were officials employed at FMC-Lexington at the relevant times: (1) Deborah

Hickey, Warden; (2) Dr. Michael Growse, Clinical Director; (3) Dr. Maria F. Marrero,

physician; (4) Quentin E. Moore, Nurse Practitioner ("NP"); and (5) Robert D. Williams,

Physicians Assistant ("PA").[1] Norris seeks damages from those five defendants.

In Norris' "Motion for Injunctive Relief," filed on May 4, 2010, he inserted in the case

caption the name of Brady Charles, FMC-Lexington employee, and the Federal Bureau of

Prisons ("BOP"), as an additional defendants. As Norris alleged that Charles impaired his ability

to pursue the exhaustion process, the Court broadly construes this submission, R. 8, as an

Amended Complaint under Federal Rule of Civil Procedure 15. The Clerk of the Court will be

directed to note this construction in the docket sheet, and to list Brady Charles and the BOP as

a additional defendants herein.

<u>ALLEGATIONS OF THE COMPLAINT [R. 2]</u>
1. <u>Medical Treatment Rendered Between April 28, 2008 and December 3, 2008</u>

Norris states that he arrived at FMC-Lexington on April 28, 2009, at which time he was

examined by Michael Hardin, Registered Nurse. R. 2, p. 4, p. 10. Norris states that at that time,

he suffered from the following medical conditions:

(1)      cardiovascular problems which caused him to experience shortness of breath,

chest pain,

(2)      respiratory problems, including chronic obstructive pulmonary disorder

---

[1]

Norris' Complaint was difficult to follow in passages, as he appeared to alternate between simply reciting passages from his medical records and asserting specific factual allegations against the originally named defendants.

("COPD");

       (3)     emotional distress and anxiety caused by post traumatic stress disorder (PTSD");

       (4)     substance abuse problems caused by a history of abuse of methamphetamine, marijuana, and cocaine;

       (5)     chronic back and left foot pain;

       (5)     hypertension (blood pressure condition);

       (6)     history of tuberculosis; and

       (7)     Hepatitis C.

*Id*.

       In the next three pages of his Complaint, Norris recited various physical ailments from which he suffered between April 29, 2008 and August 25, 2008; explained the examinations which he underwent in response to his complaints; and explained the diagnoses and the treatment prescribed as to each examination. *Id*., pp. 4-6, ¶ ¶ 11-20. These passages consist of nothing more that a summary of the medical treatment which Norris received at the prison during this four-month interval. Based on Norris' summary, he was examined by various members of the medical staff at FMC-Lexington, including nurse practitioners, PA's, and Dr. Marrero.

       The first actual "complaint" regarding his medical treatment at the prison did not surface until the bottom of page six of the Complaint, wherein Norris states that on September 22, 2008, he appeared in sick call complaining of cold or flu symptoms. *Id*., p. 6, ¶ 21. Norris alleges that on that date, he requested antibiotics, but that Dr. Growse refused his request. *Id*. He claims that he "attempted to get Defendant Growse to document that he would not give him antibiotics

while other inmates in his unit were getting them." *Id*., p. 7, ¶ 22.

On September 27, 2008, he was suffering from shortness of breath and signs of a respiratory infection. *Id*., p. 7, ¶ 23. He was examined by Rn Phillip Mullins. *Id*. Two days later, he had a follow-up examination of his throat and ears and was found to be improving. *Id*., ¶ 24. On October 15, 2008, Dr. Marrero examined Norris. *Id*., ¶ 26. Norris disputes the medical records from that date, which he claims erroneously document "no chest pain or shortness of breath." *Id*. Norris alleges that although he did feel better and that most of his chest pain was gone, he still suffered from shortness of breath. *Id*.

On October 31, 2008, he was examined by Dr. Fred Leif for complaints of right shoulder pain. Norris writes of this examination: "Assessment M/S impairment associated with Connect Tissue Dysfunction Right Frozen Shoulder. Should do well with rehab." *Id*. On November 12, 2008, Norris went to sick call to renew medical restrictions. *Id*., ¶ 28. Defendant Williams renewed Norris' "no duty" status for four months.

## 2. Events of December 3, 2008

The bulk of Norris' claims asserted in his original Complaint arose on December 3, 2008. Norris states that on that date, he was experiencing difficulties with his blood pressure; that as a result of those problems, he passed out; fell; and injured his face, eyes, nose and wrist. *Id*., p. 9, ¶ 29. Norris states that he staggered to medical and "was in need of need of treatment." *Id*. At that point, he states that NP Moore formed an "antagonistic, unprofessional attitude toward plaintiff," although Norris admits that during this exchange, he was complaining loudly; was unruly; and was disoriented. *Id*. Norris admits that when Moore told Norris to "shut his mouth,"

Norris made an inappropriate racial slur against Moore by calling him "balloon lips." *Id*. Norris contends that NP Moore should have asked him to lower his voice instead of barking out "shut your mouth." *Id*.

Based on that conduct, Moore wrote Norris up, *i.e.*, issued a disciplinary charge against him, charging him with insolence. *Id*., ¶ 29. Additionally, Norris complains that Moore sent him to an officer whom Norris identifies as "Lt. Laffery," who then placed Norris in the Segregated Housing Unit ("SHU"). *Id*., ¶ 30. Norris states that when he had initially reported to Central Clinic after his fall on December 3, 2008, that someone-presumably NP Moore- determined that his injuries were consistent with a fight with another inmate, not a fall. *Id*.; *see also* pp. 10-11, ¶ 38. Norris claims that on December 3, 2008, NP Moore refused to diagnose his injuries; verbally abused him; erroneously assumed that he (Norris) had been fighting with another inmate; aggravated his (Norris') physical injuries by sending him to the Lieutenant's office; and improperly encouraged Laffery to place him in the SHU instead of ensuring that he received medical treatment. *Id*., p. 11, ¶ 39; *see also*, p. 9, ¶ 30.

Norris claims that his injuries worsened as a result of NP Moore's alleged inattention and that he sustained serious bodily injuries as a result of NP Moore's failure and refusal to render medical assistance to him on December 3, 2008. *Id*.; *see also* p. 11, ¶ 39. With respect to the allegation of his worsened physical condition, Norris states as follows:

> At later date and time after December 3, 2008, Plaintiff was seen by outside eye specialist who reported that Plaintiff's eye should have been x-rayed and studied at the time of injury on December 3, 2008, and that certain permanent damage now existed.

*Id*., p. 10, ¶ 37.

Furthermore, Norris alleges that although Special Investigative Services investigated NP Moore's alleged suspicion that he had been engaged in a fight with another inmate, no charges were filed against him or anyone else. *Id*., p. 11, ¶ 40. Norris therefore asserts that NP Moore lacked any basis for writing him up on two charges: insolence and refusing to obey an order. *Id*. Norris does not state for how long he was confined in the SHU, but claims that while confined there, unidentified staff members failed to inquire as to his medical condition and denied him proper and necessary medical care. *Id*., ¶ 42.

### 3. Medical Treatment Rendered After December 3, 2008

On December 4, 2008, while confined in the SHU, Norris complained of severe pain in his left wrist and was examined by RN Phillip Mullins. *Id*., p. 9, ¶ 32. On December 10, 2008, Norris complained of elevated blood pressure and was seen by RN Michael Hardin.[2] Norris alleges that Dr. Booth, a cardiac specialist from the University of Kentucky ("UK"), prescribed Atenolol, but that "Defendant Marrero said the BOP did not use [Atenolol]." *Id*., ¶ 32. However, Norris then states that on January 13, 2009, he had a Chronic Care visit with Dr. Marrero. Of this vist, Norris writes that Dr. Marrero:

"... reviewed all of the Plaintiff's medical issues, renewed medications and discussed all known issues. Complete review of the records show no new or note worthy matters except for the placement of a stent. The stent was placed in 2008 in Indianapolis, Indiana."

*Id*., pp. 9-10, ¶ 33.

Norris then states that on January 20, 2009, PA Williams reviewed blood pressure

---

[2] It is unclear if Norris was still confined in SHU by this time.

readings from the previous weeks. *Id*., p. 10, ¶ 34. Norris makes no allegations about that examination other than stating: "the record states Plaintiff denied chest pains or shortness of breath when Plaintiff always claimed shortness of breath." *Id*. Norris states that on February 20, 2009, he was seen by cardiology TeleMed "who advised Amlodipine 5mg PO STAT for blood pressure." *Id*., ¶ 35.

Finally, Norris states that on March 4, 2009, PA Williams examined him "for PTSD." *Id*., ¶ 36. Norris states that on that date, "Plaintiff desired to be switched from Buspar back to Abilify. Staff Psychologist Dr. Geraldo Linna advised restarting at a higher dose could help complaint of night terrors." *Id*. Norris does not state whether his request was granted or denied.

DISCUSSION
1. <u>Claims Asserted Against Warden Deborah Hickey</u>

With respect to Defendant Hickey, Warden of FMC-Lexington, Norris alleges no facts which would establish liability on her part. Specifically, Norris did not allege that Hickey was personally involved either in any of the medical treatment which he described or in any of the medical decisions about which he complains. Under the facts as alleged, the only basis upon which liability could be imposed against Hickey, as the Warden and head administrator of FMC-Lexington, would be the doctrine of *respondeat superior*.

However, *respondeat superior* cannot be form the basis of liability in a *Bivens* action. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (6th Cir.1998) (Table); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir.1978). In order to find supervisors liable, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956,

8

959 (6th Cir. 1989); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert*. d*enied*, 110 S. Ct. 2173 (1990). A plaintiff must show "'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d at 416,421 (6th Cir. 1984)).

A claim must state sufficient factual matter which, if accepted as true, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), a claim is subject to dismissal for failure to state a claim where the complaint pleads facts that are "merely consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Because Norris' claims against Hickey fails to meet this threshold requirement, they will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## 2. Eighth Amendment Claims Asserted Against Dr. Michael Growse

The only reference which Norris makes to Dr. Growse's involvement in his medical care is the his allegation that on September 22, 2008, he was examined by Dr. Growse in connection with cold or flu symptoms; that he (Norris) requested antibiotics; that Dr. Growse denied that request; and that the denial made Norris "unhappy." R. 2, p. 6, ¶ 21.

The Court will examine the Eighth Amendment's standards in order to determine whether Norris has alleged a sufficient claim against Dr. Growse. The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Failure

to provide medical care may rise to the level of a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment where objective and subjective requirements are met. *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001); *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994). Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d at 895; *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321 (1991) (stating that Eighth Amendment is implicated by the "unnecessary and wanton infliction of pain" and not "inadvertent failure to provide adequate medical care"). The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. at 837) (internal quotation marks omitted).

The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir.2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)) (internal

quotation marks omitted).

Finally, allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994).

Norris has failed to satisfy the objective criteria as to his claims against Dr. Growse. He has not established the existence of a serious medical condition with respect to the specific complaints which he lodged with Dr. Growse on September 22, 2008. Norris does not allege that the denial of antibiotics on this one isolated occasion caused subjected him to any adverse, specific, or long-lasting physical injury as the result of being denied antibiotics on September 22, 2008. *See Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (requiring that the prisoner demonstrate more than "mere discomfort or inconvenience"). The facts as he alleges them refutes such a conclusion. Norris states when he was examined for follow-up two days later, his throat and ears and were found to be improving. R-2, ¶ 24. A prisoner cannot sustain an Eighth Amendment claim unless he can show that he suffered some "actual injury." *See White v. Holmes*, 21 F.3d 277, 281 (8th Cir.1994) ("[w]hile a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation").

Norris makes no further mention of Dr. Growse's involvement in his medical care after September 22, 2008. While Norris complains at length about the alleged failure of FMC-Lexington staff to render medical assistance to him over two months later, on December 3, 2008,

he does not mention Dr. Growse in connection with those later events.  As noted, in a *Bivens* proceeding, liability cannot be assigned to a defendant-supervisor simply on the basis of *respondeat superior.*

Furthermore, Norris' dispute with Dr. Growse as to the administration of antibiotics on the date of September 22, 2008, lies solely with the adequacy of the treatment which he received, and does not rise to the level of an Eighth Amendment claim under.  In *Westlake v. Lucas*, 537 F.2d 857 (8th Cir. 1976), the distinction was made between a complaint alleging a complete denial of medical care and one where the prisoner was simply second guessing medical judgments and attempting to "constitutionalize claims which sound in state tort law."  *Id.* at 860; *see also Jennings v. Al-Dabagh*, 97 F. App'x. 548, 550 (6th Cir. 2004) ("Jennings's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to Jennings's serious medical needs."); *Durham v. Nu'Man*  97 F.3d 862, 869 (6th Cir. 1996) ("The Plaintiff's complaints go to the adequacy of the medical care; they do not raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*. They were not deliberately indifferent to a serious medical need of the Plaintiff.").  In summary, Norris has not alleged the existence of a "serious" medical need stemming  from Dr. Growse's refusal to provide him with antibiotics on September 22, 2008.

### 2. Eighth Amendment Claims Asserted Against PA Robert D. Williams

Norris' claims against PA Williams suffer from the same deficiencies.  Norris mentions PA Williams in his Complaint three times.  The first reference to Williams was in paragraph No.

25, wherein Norris states as follows:

> On October 8, 2008, Plaintiff see by Defendant PA Robert William PA-C. The Plaintiff was concerned with isolated increase in blood pressure during infection but now back to 127/87. All vitals are in normal range. No assessment of other problems."

R. 2, p. 7.

Norris' second reference to Williams is found in paragraph No. 28, wherein he simply stated that Williams renewed his "no duty" for four months. R. 2, p. 8. This statement presumably means only that Williams authorized Norris to be relieved of any work assignments in the prison. In Norris' third reference, he states that on March 4, 2009, PA Williams examined him "for PTSD," and at that time, Norris asked to be switched from one drug, "Buspar," back to another drug, "Abilify.." He does not state whether his request was granted or denied.

As explained, *pro se* complaints are subject to *Iqbal*'s requirement that "they plausibly suggest entitlement to relief." *Cf. Garrett v. Belmon Co. Sheriff's Dept.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (applying *Iqbal* standard to prisoner's *pro se* civil rights claims under Section 1983); *see also Nat'l Bus. Devel. Serv., Inc. v. American Credit Educ. and Consulting, Inc.*, 299 F. App'x 509, 511 (6th Cir. 2008) (declining to apply more lenient *pro se* standard than heightened pleading requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to *pro se* claim, noting Supreme Court's admonition that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires ... ").

Here, Norris has simply listed the dates on which he was examined by Williams; has stated why he was examined by Williams ; and has named Williams as a defendant in broad

"blanket fashion," but he has not alleged that Williams actually deprived him of medical care, in *any* respect, in violation of the Eighth Amendment.  Indeed, Norris states only that Williams renewed his paperwork removing from work status and examined him for blood pressure concerns.  Neither of these actions constitute a deliberate indifference of any kind.  Norris's claims against Williams do not plausibly suggest entitlement to relief under the *Ibqal* analysis.

Even if the Court were to guess that Norris disagreed with PA Williams on March 4, 2009, about which anti-depressant drug he should be taking (since Norris failed to explain what his complaints were regarding PA Williams), such disagreement would only be just that- a disagreement as to the adequacy and sufficiency of medical treatment he was receiving.  As the Court has explained, mere disagreements between prisoners sand prison health care providers do not amount to Eighth Amendment claims.  *See Westlake v. Lucas*, 537 F.2d 857.  Norris' Eighth Amendment claims against PA Williams will be dismissed with prejudice, for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)

4. Eighth Amendment Medical Claims Against
NP Quentin Moore and Dr. Maria F. Marrero
A. Claims Against NP Quentin Moore

Norris alleges that NP Moore refused to examine him for injuries he sustained on December 3, 2008; that Moore was focused solely on having Norris disciplined for fighting with another inmate; that Moore was verbally abusive, insulting an disrespectful to him; that as a result of Moore's inaction, his eye and wrist injuries significantly worsened; and that another non-prison medical expert subsequently informed him that he had sustained permanent injury to his eye and that immediate medical attention had been needed.

Norris does not mention whether he exhausted these Eighth Amendment medical claims, a factor which could implicate a statute of limitations barrier. Regardless, at the screening stage, these allegations sufficiently satisfy both the objective and subjective criteria of the Eighth Amendment such as to require a response from NP Moore. The Clerk of the Court will be directed to issue summons for NP Moore and the United States Marshal's office will be directed to serve NP Moore.

## B. Claims Against Dr. Maria F. Marrrero

Norris makes only two specific factual allegations with respect to Dr. Marrero's direct involvement in his medical treatment. First, he states that she examined him on October 15, 2008; wrote in the medical records that Norris was feeling better and that he reported "no chest pain or shortness of breath." R. 2, p. 6, ¶ 26. Norris admitted that he was feeling better, but claims that Dr. Marrero "lied" about him having shortness of breath on that date. *Id*. Although Norris broadly alleges at the end of his Complaint, in "catch-all fashion" that Dr. Marrrero refused to properly treat and control his blood pressure, the detailed factual allegations in the preceding paragraphs refute his broader, "blanket" claims that Dr. Marrrero was deliberately indifferent to his blood pressure condition.[3]

Norris does not allege that he suffered any adverse consequence, actual injury, medical set back or harm because he had shortness of breath on October 15, 2008. In fact, in the very

---

[3]

In paragraph 41 of the Complaint, Norris also broadly alleged that Defendant Moore and Defendant Williams also refused to properly treat and control his blood pressure. R. 2, p. 11, ¶ 41. His prior detailed factual allegations concerning their involvement, however, do not substantiate this generalized claim.

next paragraph, he made no mention of the shortness of breath; stated that he complained of shoulder pain on October 31, 2008; and stated that he was examined in response to that complaint.  As to his alleged should ailment, Norris again only stated that he was examined on October 31, 2008 for the condition.

A *Bivens* defendant cannot be held liable under a theory of *respondeat superior*.  With respect to Norris' alleged shoulder condition, his detailed factual allegations fail to establish that any of the named defendants personally or directly denied him medical treatment for that condition.  Furthermore, Norris does not allege that Dr. Marrero was in any way involved in the alleged denial of medical treatment on December 3, 2008.  He cannot impose liability on her for the alleged events of that day, because respondeat superior does not apply in a *Bivens* action.

Finally, Norris alleges that Dr. Booth, cardiac specialist from the University of Kentucky, prescribed Atenolol, but that "Defendant Marrero said the BOP did not use [Atenolol]."  R. 2, ¶ 32.  Even assuming the truth of the assertion, it would merely constitute a statement of fact, not claim that Dr. Marrero was deliberately indifferent to Norris' blood pressure condition. Further, even if the Court were willing to speculate that Norris was complaining about being denied Atenolol, the construed complaint would be another example of a mere disagreement with the sufficiency and adequacy of his medical care at the prison.  As explained repeatedly herein, under *Westlake*, such disagreements do not rise to the level of wanton disregard of a medical condition as prohibited by the Eighth Amendment of the United States Constitution.

The Eighth Amendment medical claims asserted in the original Complaint, R. 2, against Dr. Maria F. Marrrero, will be dismissed.  As explained by separate Order, the Court will require

Dr. Marrero to respond, within ten days of the date of entry of this Order, to Norris' request for immediate injunctive relief, R.9. Norris alleges that despite his respiratory and heart conditions, she has refused his request to be housed in an air-conditioned unit; use an elevator pass; and be relieved of active work duties at the prison.

### 5. Fifth And Eighth Amendment Verbal Abuse Claims Against Dr. Marrero and NP Quentin Moore

Norris complains at length that Defendants Dr. Marrero and NP Moore were either hostile, antagonistic and insulting to him, and on some occasions, all of the above. These allegations fail to state an actionable claim because verbal abuse does not rise to the level of an Eighth Amendment constitutional violation. A plaintiff must allege punishments that "involve the unnecessary and wanton infliction of pain" or punishments "disproportionate to the crime committed." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Verbal abuse, harassment, and arbitrariness in dealing with inmates are not Eighth Amendment violations. *Id*. at 955; *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (verbal harassment or abuse is not sufficient to state a constitutional deprivation under § 1983); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's idle threats to hang a prisoner did not give rise to a § 1983 action).

Furthermore, an inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e). *See Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *and Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Norris' verbal abuse claims will be dismissed with prejudice. 28 U.S.C. § 1915A.

## 6. Official Capacity *Bivens* Claims

Norris has asserted claims against all of the individually named defendants in their *official* capacities. These allegations also fail to state a claim upon which relief can be granted because "a *Bivens* claim may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). As a result, any claims for damages against the defendants in their official capacities are dismissed with prejudice.

## 7. Conspiracy Claims Against Defendants Growse, Marrero, Williams and Moore

Norris claims that these defendants conspired to violate his constitutional right to receive medical treatment. R. 2, p. 14, ¶ 60. Presumably, he bases this claim under 42 U.S.C. § 1985(2) or (3). Norris fails to state a claim against under this authority. In order to state a claim under § 1985(2), a plaintiff must show either: (1) the existence of a conspiracy to use threat, force or intimidation of a witness or party to obstruct justice in any court of the United States, or (2) class-based invidious discrimination with respect to a state court proceeding.

With regard to the first prong of § 1985(2), Norris' complaint states no claim because his complaint alleges no proceedings pending in any federal court, which involved a conspiracy to deter, by force, intimidation or threat, any party or witness, or which involved tampering with a juror. Thus, the first prong of § 1985(2) is unavailable as a jurisdictional basis. *Was v. Young*, 796 F. Supp. 1041, 1053 (E.D. Mich. 1992). With respect to the second prong of § 1985(2), a plaintiff must allege the existence of "some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action." *Kush v. Rutledge*, 460 U.S. 719, 726

(1983); *Bennett v. Batchik*, 1991 WL 110385 (6th Cir. June 24, 1991). The second prong of §

1985(2) focuses on the deprivation of equal protection of the laws with respect to state court

judicial proceedings and thus the courts have required a plaintiff to demonstrate his or a class of

persons' denial of equal protection of the law.

Here, Norris does not allege that he was denied due process or equal protection of the

law. He claims that he was denied medical attention, and he does not even allege that denial was

the result of a racial or otherwise class-based invidiously discriminatory animus. Norris has not

alleged that his race, or any other classification that might apply to him, has been the object of

a "class-based invidiously discriminatory animus," as defined in *Kush v. Rutledge*, *supra*;

*Phillips v. Int'l. Ass'n. of Bridge, Structural and Ornamental Iron Workers*, 556 F.2d 939, 941

(9th Cir. 1977).

Title 42 U.S.C. § 1985(3) pertains to a conspiracy to interfere with civil rights,

specifically the conspiracy to deprive a person or a class of persons equal protection of the law.

In order to bring a 42 U.S.C. § 1985(3) claim, a plaintiff must demonstrate: (1) a conspiracy;

(2) that the conspiracy is for the purpose of depriving, either directly or indirectly, any person

or class of persons of equal protection of the laws, or of equal privileges and immunities under

the laws; (3) an act in furtherance of the conspiracy; and (4) injury to either person or property,

or deprivation of any right or privilege of a United States citizen. *Volunteer Medical Clinic, Inc.*

*v. Operation Rescue,* 948 F.2d 218, 223 (6th Cir. 1991) (citing *United Bhd. of Carpenters &*

*Joiners v. Scott*, 463 U.S. 825 (1983); *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir. 1987). A

fifth requirement was established by the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88,

102 (1971), which also requires that:  (5) the conspiratorial conduct of which the plaintiff complains must be propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Aulson v. Blanchard*, 83 F.3d 1, 2 (1st Cir. 1996).

Again, Norris alleges the denial of medical treatment, not due process or equal protection. Norris has no actionable claim under § 1985(3), because he has not alleged facts demonstrating that the defendants' conduct was motivated by racial or class-based discriminatory animus. *Azar v. Conley*, 456 F.2d 1382, 1386 (6th Cir. 1972).

Section 1985(3) covers only conspiracies against:  (1) classes who receive heightened protection under the Equal Protection Clause; and (2) "those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000), citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980).  *See also Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).

 Here, Norris complains of denied medical treatment, not denied due process or equal protection.  To the extent that Norris bases his "conspiracy" claim *solely* on the Eighth Amendment, the Court has explained that Norris' Complaint fails to allege that  three of the four medical defendants, acting independently, violated the Eighth Amendment regarding his claims asserted in the Complaint.  As for Norris' *original* claims in the Complaint, R. 2, summons issues against only one defendant (Moore), and one party does not constitute a conspiracy.

## SUMMARY

In his Complaint, R. 2, Norris has not alleged sufficient facts to allow his Eighth Amendment medical and verbal abuse claims against Defendants Deborah Hickey, Dr. Michael

Growse, Dr. Maria F. Marrero, or PA Robert D, Williams to proceed.  These claims will be dismissed, with prejudice. All official capacity claims, and all conspiracy claims against all named defendants, will also be dismissed.  Summons will be issued to Defendant PA Quentin E. Moore, and the USM will be directed to serve Moore as to the Eighth Amendment medical claims asserted against him.  As explained in a separate Order, the Court direct Maria F. Marrero to respond, **within ten days of the date of entry of this Order**, to respond **only** the medical claims set forth in  the "Motion for Emergency Injunctive Relief," R. 9.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The Clerk of the Court is directed to list Brady Charles, FMC-Lexington Unit Team Counselor, FMC-Lexington, and the Federal Bureau of Prisons, as additional named defendants herein.

(2)     The Clerk of the Court is directed to note in the docket sheet that Norris' motion seeking injunctive relief, R. 8, is construed an "Amended Complaint."

(3).     All constitutional claims asserted by *pro se* Plaintiff Larry Norris against all individually named the defendants, in their *official* capacities, are **DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the dismissal of these claims in the CM/ECF docket sheet.

(4).     All Eighth Amendment medical and verbal abuse claims, and all conspiracy claims asserted by Norris in the Complaint, R. 2, against Defendants Deborah Hickey, Dr. Maria F. Marrero, Dr. Michael Growse, and PA Robert D. Williams, in their individual capacities, are

**DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the termination of claims against these defendants in the CM/ECF docket sheet

(5).     Norris' Eighth Amendment verbal abuse claims asserted against Defendant NP Quentin Moore by are **DISMISSED WITH PREJUDICE**.

(6).     Norris' Eighth Amendment verbal abuse and medical claims asserted in the original Complaint, R. 2, against Defendant Dr. Maria F. Marrero are **DISMISSED WITH PREJUDICE**.

(7)     Norris' individual capacity Eighth Amendment medical claims against Defendant NP Quentin Moore, and Dr. Maria F. Marrero (only as to the claims asserted in thee motion filed as R. 9), shall proceed, and the Lexington Clerk's Office shall prepare the documents necessary for service of process upon NP Quentin Moore and Dr. Maria F. Marrero.

(8).     For Defendants Moore and Marrero, the Clerk shall prepare the necessary number of "Service Packets" consisting of the following documents:

        a.     Completed summons form;

        b.     Complaint [Record No. 2];

        c.     This Memorandum Opinion and Order

        d.     Completed USM Form 285.

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

(9).     For the two identified defendants, the Clerk shall also prepare three (3) Service Packets to be provided to the USM Office in Lexington, Kentucky, addressed as follows:

        a.      to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

        b.      to the Office of the Attorney General of the United States in Washington, D.C.; and

        c.      for personal service at the BOP Central office in Washington, D.C.

(10).   The Lexington Clerk shall send the required Service Packets for Defendants Moore and Marrero by certified mail to USM Office in Lexington, Kentucky. The Clerk shall enter the certified mail receipt into the record and note in the docket the date that the Service Packet was delivered to the USM Office.

(11).   The USM Office shall serve each of the identified defendants by:

        a.      Sending a Service Packet for each identified defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

        b.      Sending a Service Packet for each identified defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.; and

        c.      Personally serving a Service Packet upon the named defendants through arrangement with the Federal Bureau of Prisons.

The USM Office is responsible for ensuring that each defendant is successfully served with process.  In the event that an attempt at service upon a defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure

successful service.

(12).    Within 40 days of the date of entry of this Order, the USM Office shall send a Service Report to the Lexington Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service has been accomplished with respect to each identified defendant.

a.    For each defendant to be served by certified mail, the Service Report shall include:

1.    a copy of the green card showing proof of service; or

2.    a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

b.    For each defendant to be personally served, the Service Report shall indicate:

1.    that the defendant was successfully served personally, or

2.    a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

(13).    **The Clerk of the Court is directed to immediately transmit a copy of this Order to the Office of the United States Attorney of the Eastern District of Kentucky, for the purpose of requiring  Dr. Maria F. Marrero will be directed to respond in expedited fashion, *i.e.*, within ten (10) days of the date of the date of entry of this Memorandum Opinion and Order, and the corresponding contemporaneously entered separate Order addressing Norris' emergency claims, to the medical claims set forth in  the "Motion for**

Emergency Injunctive Relief," R. 9.

(14).    Norris shall immediately advise the Lexington Clerk's Office of any change in his current mailing address.  Failure to do so may result in dismissal of this case.

(15).    Norris must communicate with the Court solely through notices or motions filed with the Lexington Clerk's Office.  The Court will disregard correspondence sent directly to the judge's chambers.

(16).     For every further pleading or other document he wishes to submit to the Court, Smith shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  Smith shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court**.

Dated this 22nd day of June, 2010.

Signed By:

_Karen K. Caldwell_    KKC

**United States District Judge**