UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-339-KSF

LARRY NORRIS,                                                                                               PLAINTIFF

V.                        **MEMORANDUM OPINION AND ORDER**

DR. MICHAEL GROWSE, et al.,                                                                        DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

The Court considers the motion of defendant Quentin Moore, Public Health Services Nurse Practitioner, to dismiss this action, pursuant to Fed. R. Civ. P. 12(b), or alternatively, for summary judgment [R. 22]; plaintiff's *pro se* "Motion To Dismiss Defendant's 'Motion To Dismiss, Or In The Alternative Motion For Summary Judgment'" [R. 27]; and "Plaintiff's Motion For Impeachment Of Declarations" [R. 28]. For the reasons explained below, Defendant's Motion to Dismiss or, In The Alternative, for Summary Judgment will be granted; Plaintiff's motion to dismiss defendant's motion and Plaintiff's motion to impeach certain declarations will be denied, and this case will be dismissed.

**BACKGROUND**

Plaintiff Larry Norris ("Norris"), an inmate at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), filed this action, pursuant to the doctrine set forth in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), against the following named defendants, individually and in their individual capacities as government employees at FMC-Lexington: Deborah Hickey, Warden; Dr. Michael Growse, Clinical Director; Dr. Maria F. Marrero, physician;

Quentin E. Moore, Nurse Practitioner ("NP"); and Robert D. Williams, Physician's Assistant ("PA"). Norris also asserted negligence claims under the Federal Tort Claims Act ("FTCA").[1] Norris alleged that with respect to several medical conditions from which he suffered, the defendants had denied him proper and necessary medical treatment in violation of the Eighth Amendment of the United States Constitution. He further claimed that some of the named defendants verbally insulted him and conspired to deprive him of needed medical treatment. Norris seeks compensatory damages of $2.5 Million against each defendant, punitive damages of $1.0 Million against each defendant, and the costs of present and future medical care.

For the reasons detailed in the Memorandum Opinion and Order of June 22, 2010, the court dismissed all claims against all defendants with the exception of Norris' Eighth Amendment medical claims against defendant NP Quentin E. Moore in his individual capacity.

**FACTUAL BACKGROUND**

On December 3, 2008, at approximately 6:50 a.m., Norris went to the Lieutenant's Office holding a white towel with ice over his right eye, reporting that he had fainted and fallen in his room, hitting his face on the floor, about 6:00 a.m. (*See* Declaration of Carlos J. Martinez, ¶ 5; Attachment B to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). At approximately 7:00 a.m., Norris reported for medical treatment for the injuries he sustained in this fall and was medically assessed by Registered Nurse ("RN") Phillip Mullins, Clinical House Coordinator. RN Mullins assessed Norris' injuries/condition and noted that he had a hematoma on

---

[1] However, by Order of December 11, 2009, the Court entered an Order, on Norris' construed motion to voluntarily dismiss his FTCA claims, which dismissed his FTCA claims without prejudice because he had not exhausted his administrative remedies with respect to those claims. (R. 7).

2

his left eye and an abrasion on his right knuckles. RN Mullins determined that no treatment was indicated. (*See* Declaration of Phillip Mullins, ¶ 6 (R. 48-1); Declaration of Carlos J. Martinez, ¶ 6, and Attachment C thereto; Declaration of Dr. Michael Growse, ¶ 4; Declaration of Quentin Moore, ¶ 10, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).

Thereafter, Norris proceeded to the Central Clinic about 7:15 a.m. that day, entering the Clinic loudly voicing his dissatisfaction with the medications he had been prescribed for his hypertension.[2] Apparently, Norris had concluded that the prescribed medications were not effectively controlling his hypertension. (*See* Declaration of Carlos J. Martinez, ¶ 7; Declaration of Quentin Moore, ¶ 5, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). More than once, NP Moore asked Norris to lower his voice, but he failed to do so and continued to loudly complain about his prescribed blood pressure medication. *Id.* NP Moore again asked Norris to be quiet, provoking Norris' response that "I can talk about what I want to. If I want to, I can talk about you 'Balloon Lips.'" *Id.* A brief verbal exchange occurred between Norris and NP Moore, and NP Moore instructed Norris to go to the Lieutenant's Office. Ultimately, after three requests my NP Moore, Norris left the Central Office and reported to the Lieutenant's Office. (*See* Declaration of Quentin Moore, ¶¶ 5-6; Declaration of Carlos J. Martinez, ¶ 7, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). Later that morning, at approximately 11:00 a.m., NP Moore wrote an Incident

---

[2] In his complaint, Norris states that on the morning of December 3, 2008, he had experienced a recurrence of "his blood pressure going uncontrolled which causes the Plaintiff to pass out. This time he passed out and fell face down injuring his eye, nose, face and wrist." Complaint, page 8, ¶ 29 (R. 2).

Report charging Norris with Insolence Toward a Staff Member, Prohibited Act 312, and with Refusing An Order, Prohibited Act 307.[3]  *See* Declaration of Quentin Moore, ¶ 7; Declaration of Carlos J. Martinez, ¶ 7, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).

Initially, prison officials were suspicious of Norris' injuries because these injuries were consistent with his having been involved in an altercation with another inmate, either as the aggressor or as the victim of an assault.  Photographs of his injuries were taken, and Lieutenant E. Lafferty decided to place Norris in Administrative Detention in the Special Housing Unit ("SHU"), pending an investigation by the Special Investigation Services ("SIS") for Norris' possible involvement in an assault.  *See* Declaration of Carlos J. Martinez, ¶ 8, and Attachment B thereto, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).  Subsequently, SIS Lieutenant R. Hawthorne recommended that Norris remain in the SHU until an investigation of the cause of his injuries was completed.  *Id.*  The investigation began that day.

The following day, December 4, 2008, Norris reported to Sick Call/Triage at the SHU and was seen by RN Mullins.  *See* Declaration of Dr. Michael Growse, ¶ 5 and Attachment C thereto, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).  Norris complained of left wrist pain after his fall the previous day.  *Id.*  RN Mullins reported that the wrist was swollen and red, and an x-ray was ordered.  Norris voiced no other complaints or deficits.  *Id.*  These x-rays revealed no abnormality, as seen from the following radiology report:

---

[3] Later, after a Disciplinary Hearing, a Disciplinary Hearing Officer found Norris guilty of these offenses and Norris was sanctioned with 180 days loss of Commissary.

> FINDINGS: Multiple views show no evidence of any acute, displaced fracture or dislocation of the visualized bony architecture. The joint spaces appear normal. No soft tissue abnormality is seen. No effusion is identified.
>
> IMPRESSION: Unremarkable examination.

*See* Attachment D to Declaration of Dr. Michael Growse, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).

From December 10, 2008 to April 15, 2009, Norris was seen several times by the medical staff as part of his scheduled chronic care clinics and other medical interventions. *See* Declaration of Dr. Michael Growse, ¶ 7, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). Norris did not complain of an alleged eye injury until May 26, 2009. *Id.*, ¶ 8. During the May 26 visit, Norris reported that he had experienced a dull pain in the left eye since blunt trauma on December 8, 2008. *Id.* He described the level of pain as a 2-3 out of possible 10. *Id.* He complained of intermittent retro-orbital headaches/pressure and lateral blurring. *Id.* The examiner, Robert Williams, PA-C, requested an optometry consultation evaluation for Norris, and he was advised to return immediately if the condition worsened. *Id.*, and Attachment E thereto.

On June 23, 2009, a Consultation Request was issued concerning the eye pain Norris had reported he was experiencing. On March 4, 2010, a follow-up encounter was performed at Health Services; the June 23, 2009, optometry consult result was brought to the attention of medical staff at FMC-Lexington, and the consultation was promptly ordered, in addition to an x-ray of Norris' skull. *Id.,* and Attachments F and G thereto. On March 5, 2010, an opthalmalology consultation request was issued. *See* Declaration of Dr. Michael Growse, ¶ 12, and Attachment H thereto, all

attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).

On March 8, 2010, a series of x-rays was taken of Norris' skull. *See* Declaration of Dr. Michael Growse, ¶ 13, and Attachment I thereto, all attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). On the same date, x-rays of Norris' orbits were taken. *Id.*, and Attachment J. The x-rays revealed no evidence of a fracture, no bony abnormality, and no localized soft tissue abnormality. *Id.* The impression revealed no evidence of traumatic injury. *Id.*

From March 12, 2010, to May 11, 2010, Norris was seen through his regular chronic care clinic and other medical interventions, and he voiced no other eye complaints. *See* Declaration of Dr. Michael Growse, ¶ 14, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). On May 13, 2010, Norris was seen in the Ophthalmology Clinic at the University of Kentucky, Department of Ophthalmology and Visual Services. *Id.*, ¶ 15. The opthalmalology evaluation revealed no afferent pupillary defect. *Id.*, Attachment K. Full extra ocular movements and confrontation to visual fields were noted. *Id.* Also, there was no evidence of any step offs or numbness, and an unremarkable Slitlamp examination and a normal dilated funduscopic examination were noted from the evaluation. *Id.* No ocular pathology or abnormality was seen in the eye. *Id.* Dr. Katz, the UK examining opthalmolgist, reported that his Plan was for Norris to follow up as needed, and that if this condition persisted, he may consider an ENT (Ear, Nose, and Throat) consult; however, Dr. Katz opined that it is unlikely an ENT will find any pathology. *Id.*

On May 18, 2010, a follow-up encounter was performed at Health Services. *See* Declaration of Dr. Michael Growse, ¶ 17, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). Norris was notified that the ophthalmologist found no abnormality in the eye and that he could follow up with an ENT if the pain persisted. *Id.*, Attachment M. A note was made that the eye would be followed up in future chronic care clinics. *Id.* From May 19, 2010, to June 29, 2010, Norris was seen through several medical interventions and had no further eye complaints. *See* Declaration of Dr. Michael Growse, ¶ 18, attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22).

## DISCUSSION/ANALYSIS

**A.      Statutory Immunity Afforded PHS Employees Under 42 U.S.C. § 233(a)**

Norris' *Bivens* claim against NP Quentin Moore, the remaining defendant herein, does not present a viable cause of action. Relief under *Bivens* is not recognized or appropriate in two situations: (1) when a court should consider special factors to deny relief in the absence of a Congressional act, or (2) when Congress explicitly declares that an alternative remedy is the exclusive means of recovery, and it is equally effective. *Bivens*, 403 U.S. at 396-97. Although Norris asserts his claims against NP Quentin Moore under *Bivens*, Congress has explicitly declared that the FTCA, 28 U.S.C. § 2671, *et seq.,* is the *exclusive* remedy for claims arising from the medical services provided by a PHS officer or employee, as set out at 42 U.S.C. § 233(a), which provides, in pertinent part, that:

> "[t]he remedy against the United States provided by sections 1346(b) and 2672 of title 28 ... for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment,

> *shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee* (or his estate) whose act or omission gave rise to the claim." § 233(a) (emphasis added).

42 U.S.C. § 233(a).

As the United States Supreme Court recently held in *Hui v. Castaneda*, ___ U.S. ___, 130 S.Ct. 1845 (2010):

> Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, § 233(a) limits recovery for such conduct to suits against the United States. The breadth of the words "exclusive" and "any" supports this reading, as does the provision's inclusive reference to all civil proceedings arising out of "the same subject-matter." We have previously cited § 233(a) to support the contention that "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." *Carlson*, 446 U.S., at 20, 100 S.Ct. 1468. The meaning of § 233(a) has become no less explicit since we last made that observation.
>
> Our reading of § 233(a)'s text is not undermined by the fact that the provision preceded our decision in *Bivens*. Contrary to the view of the Court of Appeals, that a *Bivens* remedy had not yet been recognized when § 233(a) was enacted does not support the conclusion that Congress, in making the remedy provided by the FTCA "exclusive of any other civil action," did not mean what it said. Language that broad easily accommodates both known and unknown causes of action.

*Hui*, 130 S.Ct. at 1851.

Prior to *Hui,* courts in other jurisdictions also dismissed *Bivens* claims filed against PHS employees based on their statutory immunity. *See Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2nd Cir. 2000) (section 233(a) "makes the [FTCA] the exclusive remedy for specified actions against members of the PHS"); *Anderson v. Bureau of Prisons*, 176 F.App'x 242, 243 (3rd Cir. 2006); *Montoya-Oritz v. Brown,* 154 F. App'x 437, 439 (5th Cir. 2005); *Walls v. Holland*, No. 98-6506, 1999 WL 993765, *2 (E.D. Ky., Oct. 18, 1999). *See also*, *Young v. Speziale*, 2:07-03129 (SDW) (MCA) 2010 WL 2326541 (D.N.J., June 7, 2010).

8

Similar to Norris' allegations against Moore, in *Mudd v. Fish*, 7:08-cv-0641, 2009 WL 4110754 (W.D. Va., Nov. 24, 2009), Mudd alleged that he sought medical care at a BOP facility and that defendant Fish, a commissioned PHS Officer, yelled at him, refused to treat him, and sent him back to his cell. [*Id.* at *1.] Mudd claimed that Fish refused to see him unless he (Mudd) appeared at sick call at 6:30 a.m., but that he could not walk for the first two or three hours each day because of the pain he was experiencing at that time. Mudd also claimed that when he was in so much pain that he could no longer sit or walk, that he was confined to his bunk for eight days, and that he repeatedly pushed the emergency button because of the pain, but that Fish refused to send anyone to provide medical care or to transport him to sick call and reiterated that Mudd should appear at sick call. As a result, Mudd filed a *Bivens* action against Fish, alleging violations under the Eighth Amendment for cruel and unusual punishment. The district court determined that 42 U.S.C. § 233(a) provided PHS Officer Fish with absolute immunity from Mudd's *Bivens* claims and granted summary judgment to Fish. [*Id.* at *2]. *See also Edwards v. Price,* No. 09-C-5583, 2010 WL 2836715 (N.D. Ill., July 16, 2010) (holding that plaintiff's allegations of lack of medical care are limited to an FTCA action; *Bivens* claim was dismissed pursuant to 42 U.S.C. § 233(a).

In the present action, at the time of the events at issue, defendant NP Quentin E. Moore was employed by the BOP as a Registered Nurse and was a commissioned officer of the PHS with the rank of Lieutenant Commander. *See* <u>Declaration of Quentin Moore</u>, ¶¶ 2-3, attached to defendant's <u>Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment</u> (R. 22). Norris' allegations against Moore concern his performance of medical-related services or lack thereof while Moore was acting within the scope of his employment at FMC-Lexington. Therefore, Quentin

9

Moore has statutory immunity under 42 U.S.C. § 233(a) and is entitled to summary judgment on Norris' *Bivens* claims.

In response to defendant Moore's motion to dismiss or for summary judgment on the grounds of statutory immunity, Norris argues that Moore is not immune from suit because his claim against Moore is in his individual capacity, rather than in his official capacity as a PHS officer or employee; therefore, the statutory immunity under 42 U.S.C. § 233(a) does not extend to Moore in his individual capacity, and he is entitled to proceed with his *Bivens* claim against Moore.

The court in *Mudd v. Fish*, *supra*, considered and rejected this same argument, explaining as follows:

> Mudd's argument that Fish is not entitled to absolute immunity because Mudd sues him in his individual capacity does not affect Fish's absolute immunity. Section 233 provides that the FTCA is the exclusive remedy for *all damages claims arising from Fish's medical treatment while employment at USP Lee, regardless if the suit is against Fish in his official or individual capacity.*  (emphasis added).

*Id.*, at *2.

For the same reasons as stated in *Mudd*, this court is unpersuaded by Norris' argument. Regardless of whether a claim is asserted against a PHS officer or employee, either individually or in one's official capacity, the FTCA is the exclusive remedy for *all damages claims*, irrespective of capacity of suit.  Norris' argument to the contrary is without merit.  A PHS officer or employee is immune from suit for all claims not arising under the FTCA.

Additionally, in his response to defendant Moore's motion to dismiss or for summary judgment, Norris states that he "received no diagnosis or treatment from <u>anyone</u> at the clinic on December 3, 2008."  <u>Plaintiff's Motion To Dismiss Defendant's "Motion To Dismiss, Or In The Alternative Motion For Summary Judgment"</u>, (R. 27, page 2).  This statement is refuted by the

Declaration of Phillip Mullins, ¶ 6 (R. 48-1); and the Inmate Injury Assessment And Followup dated December 3, 2008. *See* Attachment B to Declaration of Dr. Michael Growse; and Attachment C to Declaration of Carlos J. Martinez, both of which are attached to defendant's Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment (R. 22). This Inmate Injury Assessment And Followup reflects that Norris appeared before RN Mullins for treatment at 7:00 a.m., reporting that at 6:00 a.m., he had passed out in his cell, fell and hit his face on the floor. Norris reported "Pain Left Eye - Abrasion Right Knuckle." RN Mullins' observations of Norris' injuries were "Hematoma - Left Eye - Abrasion Right Knuckles," and that no treatment was indicated. *Id.* This form also states that Norris received no medical attention, and it is signed by both Norris and RN Mullins. *Id.* Thus, contrary to Norris' claim, he *was* seen by RN Mullins on December 3, 2008, before the encounter with RN Quentin Moore, but RN Mullins concluded that Norris did not require any medical treatment at that time.

Norris' claim that he was never seen by the Ophthalmology Department at the University of Kentucky Medical Center is also refuted by the record. On May 13, 2010, Norris was seen in the Ophthalmology Clinic at the University of Kentucky, Department of Ophthalmology and Visual Services. *Id.,* ¶ 15. No ocular pathology or abnormality was seen in the eye. *Id.* Dr. Katz, the UK examining opthalmolgist, reported that his Plan was for Norris to follow up as needed, and that if this condition persisted, he may consider an ENT (Ear, Nose, and Throat) consult; however, Dr. Katz opined that it is unlikely an ENT will find any pathology. *Id.*

**B.     Motion For Impeachment of Declarations**

Attempting to defeat defendant Moore's motion to dismiss or for summary judgment, Norris has moved to impeach the Declarations of Dr. Michael Growse, Carlos J. Martinez, and Quentin

Moore, asserting that these declarations present information that is second-hand, hearsay information that would be inadmissible at trial and thus, cannot be used to support defendant Moore's motion to dismiss or for summary judgment.

Dr. Michael Growse is the Clinical Director at FMC-Lexington. His Declaration does no more than summarize information contained in Norris' medical records maintained at FMC-Lexington. The source for the statements Dr. Growse makes in his Declaration is found in Attachments B through M, accompanying his Declaration.

Carlos J. Martinez is the Senior Attorney at the Consolidated Legal Center in Lexington, Kentucky. His Declaration also summarizes information contained in Norris' medical records, and it summarizes information contained in prison records concerning the disciplinary report filed by Quentin Moore after his encounter with Norris on December 3, the results of that disciplinary charge, and the prison's investigation as to whether Norris had been in a physical altercation with another inmate that resulted in the injuries he presented to RN Mullins.

Quentin Moore, the remaining defendant herein, is the Nurse Practitioner and PHS employee with whom Norris had a verbal exchange encounter on December 3, 2008, after Norris was seen by RN Phillip Mullins. Subsequently, Quentin Moore submitted an Incident Report on December 3, 2008, charging Norris with two violations. His Declaration simply recounts those events as they occurred chronologically.

The court is unpersuaded by Norris' argument that the foregoing Declarations should be impeached or stricken from the record because (1) they contain hearsay and (2) none of the declarants actually witnessed the events at issue. These two factors, even if true, do not change the fact that RN Quentin Moore is a PHS employee who is protected from the claims asserted against

him in this *Bivens* action by the statutory immunity provided by 42 U.S.C. § 233(a). To reiterate, Congress has explicitly declared that the FTCA, 28 U.S.C. § 2671, *et seq.,* is the *exclusive* remedy for claims arising from the medical services provided by a PHS officer or employee, regardless of the capacity (individual or official) in which those claims are asserted against a PHS officer or employee.

Consequently, Norris' motion to impeach the Declarations of Dr. Michael Growse, Carlos J. Martinez, and Quentin Moore is without merit.

### CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  Defendant Quentin E. Moore's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [R. 22] is **GRANTED**;

(2)  Plaintiff's Motion To Dismiss Defendant's Motion To Dismiss, Or In The Alternative Motion For Summary Judgment [R. 27] is **DENIED**;

(3)  Plaintiff's Motion For Impeachment Of Declarations [R. 28] is **DENIED**.

(4)  All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.

(5)  Judgment in favor of the named Defendant shall be entered contemporaneously with this Memorandum Opinion and Order.

This September 21, 2011.



Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**